**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **JOSE L. MONTEIRO**<br>137 Florence St.<br>Brockton, MA 02301 | CASE NO. 2:21-cv-625 |
| | JUDGE |
| Plaintiffs, | MAGISTRATE |
| vs. | **COMPLAINT FOR DAMAGES**<br>**(Jury Demand Requested)** |

**JEFF WYLER COLUMBUS, INC.**
**d/b/a Jeff Wyler Chevrolet of Columbus**
℅ Corporation Statutory Services, Inc.,
Registered Agent
255 E. Fifth St., Suite 2400
Cincinnati, OH 45202

AND

**ALLY BANK**
℅ CT Corporation System, Registered Agent
4400 Easton Commons Way, Suite 125
Columbus, OH 43215

AND

**AMERICREDIT FINANCIAL**
**SERVICES, INC.**
**d/b/a GM Financial**
℅ Corporation Service Company, Registered
Agent
50 W. Broad Street, Suite 1330
Columbus, OH 43215

AND

**CAPITAL ONE AUTO FINANCE, INC.**
℅ Corporation Service Company, Registered
Agent
50 W. Broad Street, Suite 1330
Columbus, OH 43215

AND

**CITIZENS FINANCIAL GROUP, INC.**
**d/b/a Citizens Bank**
℅ Corporation Service Company, Registered
Agent
50 W. Broad Street, Suite 1330
Columbus, OH 43215

AND

**FIFTH THIRD BANCORP**
℅ Corporation Service Company, Registered
Agent
50 W. Broad Street, Suite 1330
Columbus, OH 43215

AND

**GLOBAL LENDING SERVICES LLC**
c/o Cogency Global Inc., Registered Agent
3958-D Brown Park Drive
Hilliard, OH 43026

AND

**JP MORGAN CHASE BANK, N.A.**
℅ Attn: Jamie Dimon, C.E.O.
270 Park Avenue
New York, NY 10017

AND

**MANUFACTURERS AND TRADERS**
**TRUST COMPANY**
**d/b/a M&T Bank**
℅ Corporation Service Company, Registered
Agent
50 W. Broad Street, Suite 1330
Columbus, OH 43215

AND

**PARK NATIONAL CORPORATION**

2

**d/b/a/ The Park National Bank of**
**Southwest Ohio and Northern Kentucky**
℅ Matthew R. Miller, Registered Agent
50 N. Third Street
Newark, OH 43055

AND

**SANTANDER CONSUMER USA, INC.**
**d/b/a Chrysler Capital**
℅ CT Corporation System, Registered Agent
4400 Easton Commons Way, Suite 125
Columbus, OH 43215

AND

**U.S. BANK, NATIONAL ASSOCIATION**
℅ CT Corporation System, Registered Agent
4400 Easton Commons Way, Suite 125
Columbus, OH 43215

     Defendant(s)


     Plaintiff Jose Monteiro ("Plaintiff" or "Monteiro"), through Counsel and for his

Complaint for Damages against Defendants Jeff Wyler Columbus, Inc., Ally Bank, Americredit

Financial Services, Inc., Capital One Auto Finance, Inc., Citizens Financial Group, Inc., Fifth

Third Bancorp, Global Lending Services, LLC, JP Morgan Chase Bank, N.A., Manufacturers

and Traders Trust Company, Park National Corporation, Santander Consumer USA, Inc. and

U.S. Bank, National Association (collectively "Defendants") hereby states as follows:

## INTRODUCTION

     1.    The United States Congress has found the banking system is dependent upon fair

and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the

banking system, and unfair credit reporting methods undermine the public confidence, which is

essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2.      The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

3.      The distinction between a "soft" and "hard" credit inquiry is substantial. Specifically, a "hard" inquiry reduces a consumer's credit score, remains on credit reports for two years, and contains substantially more information (that is confidential and personal) than a "soft" inquiry. Further a "soft" inquiry does not appear on a credit report to any inquiring party[1], and does not lower an individual's credit score. See 15 U.S.C. §§ 1681b(a)(3)(A) and 1681b(c)

---

[1] A "soft" inquiry is only visible to the individual whom the credit report relates. As such, no inquiring party is able to view the "soft" inquiries, especially the number of soft inquiries that has occurred.

4

4.      Moreover, a "hard" inquiry reduces a consumer's credit score, and remains on credit reports for two years, while a "soft" inquiry does neither.

5.      Indeed, it is well established that merely inquiring about the possibility of a future transaction, or shopping for rates, is insufficient to satisfy the requirement of the FCRA to initiate the kind of full credit inquiry that is allowed when a consumer has initiated a transaction.

6.      Over fifteen years ago, the FTC opined that a customer who "'comes to an automobile dealership and requests information' from a salesman about one or more automobiles" had not initiated a transaction sufficient to allow the dealership to pull a credit report.[2]

7.      Monteiro brings this action against Defendant Wyler for its unilateral decision following the expiration of the terms of the "spot delivery" contract to compel multiple unauthorized hard pulls on Monteiro's credit by the other Defendants.

8.      Monteiro brings this action against all other Defendants for the unauthorized hard pulls which have caused significant and potentially irreparable damage to his credit.

## PARTIES, JURISDICTION, AND VENUE

9.      Plaintiff Jose Monteiro ("Monteiro") is a natural person residing in Brockton, Massachusetts.  Monteiro is a "consumer" as that term is defined by 15 U.S.C. 1681a(c).

10.     Defendant Jeff Wyler Columbus, Inc. ("Wyler") is a domestic corporation incorporated under the laws of the State of Ohio with its principal place of business located at 5885 Gender Road, Canal Winchester, Ohio 43110.  Wyler is the owner of the registered trade

---

[2] FTC Letter to Coffey (Feb. 11, 1998), available at
http://www.ftc.gov/policy/advisoryopinions/advisory-opinion-coffey-02-11-98/) (last visited February 8, 2021)

name of Jeff Wyler Chevrolet of Columbus, which is one of Wyler's dealerships in Canal Winchester, Ohio.  All of Monteiro's interactions with Wyler were through Jeff Wyler Chevrolet of Columbus.

11.     Defendant Ally Bank ("Ally") is a nationally chartered bank incorporated under the laws of the State of Utah with its principal place of business located in Detroit, Michigan.

12.     Defendant Americredit Financial Services, Inc. ("Americredit") is a foreign corporation incorporated under the laws of the State of Delaware with its principal place of business located in Fort Worth, Texas.  Americredit is also the owner of the Registered Trade Name GM Financial.   All of Monteiro's interactions with Americredit were through GM Financial.

13.     Defendant Capital One Auto Finance, Inc. ("Cap One") is a foreign corporation incorporated under the laws of the State of Texas with its principal place of business located in Plano, Texas.

14.     Defendant Citizens Financial Group Incorporated ("Citizens") is a foreign corporation incorporated under the laws of the State of Delaware with its principal place of business located in Providence, Rhode Island.  Citizens is the owner of Citizens Bank, N.A. a federally chartered financial institution.   All of Monteiro's interactions with Citizens were through Citizens Bank, N.A.

15.     Defendant Fifth Third Bancorp ("Fifth Third") is a federally chartered bank incorporated under the laws of the State of Delaware with its principal place of business in Cincinnati, Ohio.

16.     Defendant Global Lending Services LLC ("Global") is a limited liability corporation incorporated under the laws of the State of Delaware with its principal place of business in Greenville, South Carolina.

17.     Defendant JP Morgan Chase Bank, N.A. ("Chase") is a federally chartered bank incorporated under the laws of the State of Delaware with its principal place of business in New York City, NY. Monteiro's interactions with Chase were through Chase Auto Finance.

18.     Defendant Manufacturers and Traders Trust Company ("M&T") is a foreign corporation incorporated under the laws of the State of New York with its principal place of business in Buffalo, New York. M&T is the owner of M&T Bank, a federally chartered institution.

19.     Defendant Park National Corporation ("Park") is a domestic corporation with its principal place of business in Newark, Ohio. Park is the owner of Park National Bank which does business under a registered trade name, The Park National Bank of Southwest Ohio and Northern Kentucky.

20.     Defendant Santander Consumer USA, Inc. ("Santander") is a foreign corporation incorporated under the laws of the State of Illinois with its principal place of business in Dallas, Texas. Santander is also the owner of the registered trade name of Chrysler Capital. All of Monteiro's interactions with Santander were through Chrysler Capital.

21.     Defendant U.S. Bank, National Association ("U.S. Bank") is a federally chartered bank incorporated under the laws of the State of Delaware with its principal place of business in Eagan. MN.

22. This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. §1681 et seq.; 28 U.S.C. §1331;

23. This Court has supplemental jurisdiction to hear all state law statutory and common law claims pursuant to 28 U.S.C. §1367.

24. Venue lies in this District pursuant to 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred, or a substantial part of property that is the subject of the action, is in this District.

## FACTUAL BACKGROUND

25. Monteiro incorporates the allegations contained in Paragraphs 1 through 25 as if fully restated herein.

26. Sometime prior to November 13, 2020 Monteiro began searching on the internet for a 2021 Chevrolet Suburban High Country ("Suburban").

27. On November 13, 2020 while browsing for a Suburban, Monteiro went onto Car Gurus and came across a listing placed by Wyler for a Suburban for a purchase price of around $72,000.00.

28. After reviewing the listing Monteiro contacted Wyler where he was put in contact with Ethan Fisher, a salesman employed by Wyler ("Fisher"). During these initial conversations on November 13, 2020, Monteiro and Fisher discussed the sales price, Fisher sent Monteiro an online credit application and Monteiro returned the application.

29. On November 14, 2020 Fisher contacted Monteiro regarding releasing the fraud alert that existed on Monteiro's credit[3] that GM Financial (Americredit) had noticed when

---

[3] Monteiro had maintained for a number of years previous to the transactions described in this Complaint, and continues to maintain, a fraud alert on his credit.

Monteiro's credit was run. As instructed Monteiro contacted GM Financial and verbally provided all necessary information for GM Financial to obtain Monteiro's consumer report.

30. On November 16, 2020 Fisher contacted Monteiro regarding the application process. During this call Fisher forwarded Monteiro to Mark Bowman, who identified himself as a representative of the Finance Department ("Bowman"). During his call with Bowman, Monteiro discussed receipt of the initial term sheet, further outstanding items that Bowman needed for Monteiro's application, and the potential financing terms available with GM Financial.

31. On November 18, 2020 Fisher contacted Monteiro and notified him that financing was approved and Monteiro needed to provide a downpayment of $12,000.00 which would consist of a $7,000.00 down payment and $5,000.00 for all outstanding taxes, title fees, etc.

32. On November 19, 2020 Monteiro obtained a certified check from his bank in the amount of $12,000.00 and flew from his home to Columbus, Ohio. The trip, including the one-way flight, hotel, and incidental expenses, cost Monteiro in excess of $800.00.

33. On November 20, 2020 Monteiro was picked up at his hotel around 7:00am by Fisher and the two traveled to Jeff Wyler Chevrolet of Columbus in Canal Winchester, Ohio.

34. During the 45-60 minutes at the Dealership Monteiro and Fisher first inspected the Suburban. Following the inspection Monteiro met with Fisher to review all of the paperwork including the Buyer's Order and Retail Installment Sales Contract. *See* Exhibit 1 - Buyer's Order and Retail Installment Sales Contract.

35. During the review of the paperwork Monteiro questioned a number of differences between the paperwork presented for signature on November 20, 2020 and the initial terms sheet

sent by Fisher including, but not limited to: (1) an explanation as to why the finance price on Exhibit 1 was more than $5,000.00 higher than the advertised price on CarGurus; (2) an explanation as to why the interest rate on the RISC was different from what Monteiro had research was available to borrowers with GM Financial with similar credit scores; and (3) why the documents were dated for November 19, 2020.

36.     Fisher responded to Monteiro that Bowman was responsible for the paperwork preparation and that when Bowman arrived in the office that day that Fisher would address Monteiro's concerns.

37.     Based on Fisher's representations, Monteiro executed the Buyer's Order and Retail Installment Sales Contract on November 20, 2020.

38.     After signing the documents but before providing the down payment, Monteiro requested that Fisher provide him with copies of all documents to ensure Monteiro had all of the necessary documentation to transfer the title to Massachusetts.  Monteiro was instructed by Fisher that all documentation would be sent to him by Wyler's corporate office but he would not be provided with all of the paperwork that day.

39.     Monteiro was satisfied with Fisher's representations, paid the down payment of $12,000.00 to Wyler, and took possession of the Suburban on November 20, 2020.  Monteiro then drove the vehicle from Canal Winchester to his home.

40.     Pursuant to the terms of the Retail Installment Sales Contract Monteiro had a fourteen (14) day right to cancel or by December 3, 2020. *See* Exhibit 1 at pp. 4-6.

41.     On December 5, 2020 after the expiration of the right to cancel period Wyler unilaterally and without authorization from Monteiro obtained a certificate of title from the Ohio

Department of Motor Vehicles which showed GM Financial as the lienholder on the Suburban as of December 5, 2020. *See* Exhibit 2 at p. 1.

42.     By December 18, 2020 Monteiro received documentation from Wyler which he reasonably believed would be the necessary documentation to register the Suburban in Massachusetts.  Instead Monteiro received from Wyler the Ohio Certificate of Title and a check for $197.00.

43.     On December 21, 2020 Monteiro registered the Suburban in Massachusetts which included surrendering the Ohio title and paying the applicable taxes in Massachusetts of around $4,700.00.  *See* Exhibit 2 at p. 2.

44.     After registering the Suburban, Monteiro contacted Bowman on December 23, 2020 to discuss why Wyler did not send all necessary monies for the taxes.

45.     On December 28, 2020 at around 8:30pm Monteiro received an email from Bowman requesting he contact GM Financial about the loan.

46.     On December 29, 2020 Monteiro attempted to contact Bowman but had to leave a message.  Monteiro then decided to contact GM Financial.  During his call with a representative with GM Financial, Montiero was informed that (a) he did not have a loan with GM Financial, (b) his loan application was denied on December 16, 2020 due to failure of Wyler to submit a IRS Form 4506-T and (c) Wyler was informed of the denial in financing on December 16, 2020.

47.     The December 29, 2020 call with GM Financial was the first time that Monteiro found out that GM Financial had declined his financial application as neither Bowman nor any other employee of Wyler had contacted Monteiro as of December 29, 2020 to notify him that  (a) his financing was denied, (b) Wyler failed to submit financing within the 14 day Notice of

Cancel Period and (c) that Wyler was now the lienholder of the potential loan pursuant to the terms of the Retail Installment Sales Contract. *See* Exhibit 1 at p. 4 (Paragraph c. Buyer's Obligations)

48.     After speaking with GM Financial on December 29, 2020, Monteiro immediately contacted Bowman and had to leave a voicemail.

49.     On January 1, 2021 Monteiro received an email from Bowman inquiring as to whether Monteiro had heard from GM Financial yet.

50.     On January 6, 2021 Monteiro began to receive alerts from his credit alerts from TransUnion and Equifax.  *See* Exhibit 3 generally.

51.     When reviewing these alerts Monteiro received notice on January 6, 2021 that GM Financial (Americredit), Citizens Bank (Citizens One), M&T (M&T Bank), Ally Bank, Citizens One Auto Finance (Citizens One), and JP Morgan Chase Bank, N.A. had conducted "hard pulls" of his TransUnion Consumer Report. *See* Exhibit 3 at p. 2.

52.     In addition to reviewing the January 6, 2021 alerts on his TransUnion Credit Report, Monteiro received notice that on January 6, 2021 Global Lending and Capital One had conducted hard pulls of his Equifax Consumer Report. *Id.* at p. 1.

53.     When reviewing the alerts the next day Monteiro received notice on January 7, 2021 that Wyler, Huntington Bank, and Fifth Third Bank had conducted "hard pulls" of his TransUnion Consumer Report. *Id.* at p. 2

54.     In addition to reviewing his alters from TransUnion on January 7, 2021, Monteiro reviewed his Equifax alerts and received notice that on January 7, 2021 Park National and Wuler had conducted hard pulls of his Equifax Consumer Report. *Id.* at p. 1

55.     In reviewing these alerts on January 6, 2021 and January 7, 2021 Monteiro was shocked to find all of these inquiries were made without his permission given the fraud alert he maintains on his consumer reports.

56.     On January 7, 2021 Monteiro received a voicemail from "James" who identified himself as the General Manager of Jeff Wyler Chevrolet of Columbus.  In his voicemail James informed Monteiro for the first time that the financing with GM was rejected and in order to retain possession of the Suburban that Monteiro would need to tender an additional down payment to Wyler.  In this same voicemail James also told Monteiro that if Monteiro did not respond immediately that Wyler would call the police.

57.     About an hour later Monteiro received a call from Bowman.  After discussing the issues related to the December 18, 2020 packet that Monteiro received from Wyler, Bowman transferred Monteiro to "Alex" who identified himself as the finance manager for Jeff Wyler Chevrolet of Columbus.

58.     During his call with Alex, Monteiro expressed his frustration with the January 6, 2021 hard pulls and with Monteiro on the phone Alex proceeded to process the January 7, 2021 hard pulls listed above.  Alex informed Monteiro that Monteiro had expressly agreed to allow Wyler to obtain these credit pulls under the terms of the Retail Installment Sales Contract despite the fact that nowhere in the RISC did Monteiro grant this authority to Wyler. *See* Exhibit 1 at pp. 3-4.

59.     On January 12, 2021 Monteiro received a text message from Jennifer Thompson who identified herself as a general manager with Wyler. In her text Ms. Thompson stated that Wyler had financed the vehicle and Wyler intended to report the Suburban as stolen.

60.     After receiving this text Monteiro began receiving correspondence from GM Financial (Americredit) which is attached as Exhibit 4 to the Complaint. This correspondence included (1) the January 10, 2021 letter from GM Financial informing Monteiro that his finance application was denied due to (1) an inability to clear the fraud alert and (2) an inability to verity Monteiro's income and (2) a January 20, 2021 letter welcome letter which memorialized the terms of the RISC. *See* Exhibit 4 at pp. 4-9.

61.     After receiving the January 20, 2021 letter, Monteiro created an online account with GM Financial and when logging in, the GM Financial Websites indicated he had no active loan in their system. *Id.* at p. 1.

62.     Following the receipt of the January 10, 2021 denial of financing letter from GM Financial, Monteiro began to receive denial letters from all other Defendants except Wyler which are attached as Exhibit 5 to the Complaint. The denial letters included:

   a.  Ally's January 20, 2021 Denial Letter in which it admits it obtained Consumer Reports from TransUnion, Experian and SageStream, LLC and denied his application due to (1) length of time accounts have been established; (2) length of time revolving accounts have been established; (3) amount owed on revolving accounts is too high; (4) time since most recent account opening is too short; (5) inquires did impact the credit score; (6) too recent since all trades were opened; (7) too many of account balances; and (8) too high of a total number of inquiries.. *See* Exhibit 5 at pp. 1-4;

   b.  Capital One's January 14, 2021 letter which indicated the January 6, 2021 application (submitted by Wyler without authorization) was denied as  incomplete

as well as noting his Experian Credit Score had been affected by (1) length of time accounts have been established; (2) Time since most recent account opening is too short; (3) Too many inquiries in the last 12 months; and (4) Too many consumer finance company accounts; *Id.* at pp. 5-6

c.   Chase's January 7, 2021 letter which declined the Wyler unauthorized application due to not only a limited credit file but also noted his TransUnion Credit Score was impacted by (1) Ratio of balances to limits too high; (2) proportion of loan balances to loan amounts is too high; (3) length of time revolving accounts have been established and (4) Too many inquiries in the last 12 months; *Id.* at pp. 7-8

d.   Chrysler (Santander)'s January 31, 2021 letter which declined the Wyler unauthorized application and noted his Experian Credit Score, which was used by Chrysler in making the denial decision, was being negatively impacted by (1) number of accounts with delinquency, (2) proportion of loan balances to loan amounts is too high, (3) too many inquiries in the last 12 months; and (4) too many consumer finance company accounts; *Id.* at p. 9

e.   Citizen's January 27, 2021 letter which declined the Wyler unauthorized application for no comparable credit experience as well as indicating that his TransUnion Score was being negatively affected by (1) Proportion of loan balances to loan amounts is too high Length of time revolving accounts have been established; (2) Proportion of balances to credit limits too high on bank revolving or other revolving accounts; (3) Too many inquiries last 12 months; and (4) The

number of inquiries on the consumers credit file has adversely affected the credit score; *Id.* at pp. 10-11

f. Fifth Third's January 13, 2021 letter which declined the Wyler unauthorized application based on loan to value being too high in relation to number of recent inquiries as well as indicating as well as that his TransUnion Score was being negatively affected by (1) Proportion of loan balances to loan amounts is too high Length of time revolving accounts have been established; (2) Proportion of balances to credit limits too high on bank revolving or other revolving accounts; (3) Too many inquiries last 12 months; and (4) The number of inquiries on the consumers credit file has adversely affected the credit score; *Id.* at pp. 12-13

g. Global's January 29, 2021 letter which declined the Wyler unauthorized application as well as noting that both his Experian and Equifax Credit Scores were being negatively affected by (1) Length of time revolving accounts have been established, (2) Number of accounts with delinquency, (3) Ratio of balance to limit on bank revolving or other rev accts too high, (4) Proportion of loan balances to loan amounts is too high, (5) Ratio of balances to credit limits is too high on Bank Revolving or other Revolving accounts, (6) Proportion of loan balances to loan amounts is too high, (7) length of time Revolving accounts have been established and (8) Too many inquiries last 12 months; *Id.* at p. 14

h. M&T's January 14, 2021 letter which declined the Wyler unauthorized application due to lack of comparable credit for the amounts and/or type requested as well as noting his TransUnion Credit Score was being negatively impacted by

16

(1) Proportion of loan balances to loan amounts is too high, (2) Insufficient length of revolving credit history; (3) Proportion of revolving balances to revolving credit limits is too high and (4) Too many recent credit checks; *Id.* at pp. 15-17

i.  Park's January 15, 2021 letter which declined the Wyler unauthorized application due to (1) length of employment; (2) limited credit experience; and (3) value or type of collateral not sufficient. In addition to these reasons for denial Park noted that his Equifax Credit Score was being negatively impacted by (1) Proportion of loan balances to loan amounts is too high, (2) Proportion of balances to credit limits is too high; (3) Length of time revolving accounts have been established and (4) Too many inquiries in the last 12 months; *Id.* at pp. 18-19

j.  US Bank's January 21, 2021 letter which declined the Wyler unauthorized application due to (1) an unusual number of recently established credit relationships and (2) terms/conditions requested not offered. In addition to these reasons for declination, US Bank noted that his Experian Credit Score had been negatively impacted by (1) number of accounts with delinquency, (2) proportion of loan balances to loan amounts is too high, (3) too many inquiries in the last 12 months, and (4) too many consumer finance company accounts. *Id.* at p. 20.

63.  The actions originated by Wyler and performed by each of the Defendants have proximately caused Monteiro to suffer actual damages in the form of credit damage noted both in Paragraph 58 as well as Exhibits 4 and 5 as well as proactive delays in obtaining credit, including a prospective real estate deal that Monteiro has had to postpone indefinitely. The actions of Wyler and the other Defendants have additionally caused Monteiro to suffer actual

17

non-economic damages in the form of frustration, anxiety, and fear that not only will Wyler falsely report his Suburban as stolen but he will wake up every day concerned that Wyler will continue to submit unauthorized credit applications and further harm his credit.

**COUNT ONE**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT - ALL DEFENDANTS**
**15 U.S.C. § 1681, *et seq.***

64. Monteiro restates the allegations contained in Paragraphs 1 through 59 as if fully restated herein.

65. Plaintiff is a "consumer" as defined by the FCRA.

66. Each Defendant is a "person" as defined by the FCRA.

67. Each Defendant's conduct violates both 15 U.S.C. § 1681q and 15 U.S.C. § 1681b by obtaining a consumer report under false pretenses by intentionally misleading Plaintiff, or knowingly without a permissible purpose and without authorization from Plaintiff.

68. Based upon the allegations contained herein, every act to obtain Plaintiff's Consumer Report beyond the initial November 13, 2020 credit inquiry by Wyler and GM Financial was willful. Wyler knew it was not authorized to request Monteiro's credit report and acted in deliberate deliberate or reckless disregard of its obligations and the rights of Monterio. *See* Exhibits 1 through 5 generally.

69. Each other defendant, through an employee, performed a hard pull on Monteiro's Credit between November 18, 2020 through January 2021. *See* Exhibit 5.

70. Each Defendant's actions are separate and distinct as each act performed by Wyler and the individual defendant is a violation of 15 U.S.C. 1681n(a)(1)(B).

71.     As each Defendant has violated 15 U.S.C. 1681n(a)(1)(B), each Defendant is liable to Monteiro for actual damages in an amount to be determined at trial but at least $1,000.00.

72.     In addition to the actual damages above, each Defendant is jointly and severally liable for an award of punitive damages in an amount to be determined at trial.

73.     In addition to the actual damages and punitive damages above, each Defendant is liable for Monteiro's attorneys fees and costs.

<u>COUNT TWO: AGAINST ALL DEFENDANTS</u>
**Intrusion Upon Seclusion**

74.     Monteiro realleges and incorporates all of the allegations contained in Paragraphs 1 through 69 as if fully contained herein.

75.     Based on the allegations above between November 2020 to the present each Defendant intentionally interfered with the solitude, seclusion or private concerns or affairs of Monteiro. Specifically each Defendant, as instructed improperly by Wyler who had no express authority to obtain Monteiro's Credit, performed a hard pull which the parties knew or should have known was unauthorized and would proximately cause harm to Monteiro's credit score and as demonstrated by Exhibit 5, his ability to obtain credit.

76.     The actions of Wyler, GM Financial and the other Defendants into Monteiro's affairs occurred in such a way that would be highly offensive to a reasonable person. A reasonable person would not believe that once their contractual obligation ended with Wyler that Wyler and at least eight (8) other creditors would continually attempt hard pulls on their credit.

77.     The actions of the Defendants described above are a direct result into Monteiro's personal affairs and each Defendant is liable, as applicable, for actual damages in an amount to be determined and for an amount of punitive damages to be determined.

## COUNT THREE: AGAINST WYLER
### Violation of the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq.*

78.     Monteiro incorporates the allegations contained in Paragraphs 1 through 73 as if fully restated herein.

79.     Monteiro is a "consumer" as that term, the Loan is a consumer transaction and Wyler is a supplier as that term is defined by the OCSPA, R.C. 1345.01.

80.     The actions of Wyler during and after then transaction in (1) failing to provide Monteiro with all paperwork on November 20, 2020; (2) failing to obtain credit within the right to cancel period; (3) failing to notify Monteiro of the denial of credit by GM Financial; (4) the submission of at least ten (10) if not more credit applications to the other Defendants without Monteiro's consent; (5) making repeated threats to report the Suburban as stolen and file a police report against Monteiro and (6) causing the Defendants' hard pulls on Monteiro's credit reports as described in Count One in violation of the FCRA are each deceptive or unfair acts or practices in violation of R.C. 1345.02.

81.     As described above and specifically outlined in Paragraphs 58 and 59 Monteiro has been directly damaged by the acts of Wyler which have caused catastrophic credit damage, anxiety, frustration and fear.

82.     Wyler has violated the CSPA and Monteiro is entitled to an award of actual damages of at least $200.00, non-economic damages not to exceed $5,000.00, treble damages and attorneys' fees and costs.

20

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Jose Monteiro respectfully requests an Order against Defendants Jeff Wyler Columbus, Inc., Ally Bank, Americredit Financial Services, Inc., Capital One Auto Finance, Inc., Citizens Financial Group, Inc., Fifth Third Bancorp, Global Lending Services, LLC, JP Morgan Chase Bank, N.A., Manufacturers and Traders Trust Company, Park National Corporation, Santander Consumer USA, Inc. and U.S. Bank, National Association as follows:

A.      For actual damages in a total amount to be proven at trial against each Defendant jointly and severally for the allegations contained in Counts One and/or Count Two;

B.      For an award of actual damages of at least $200.00 against Defendant Wyler for the allegations contained in Count Three;

C.      For an award of statutory damages of $1,000.00 against each Defendant, as applicable, for the allegations contained in Count One;

D.      For an award of punitive damages in an amount to be determined at trial against each Defendant jointly and severally as liable for the allegations contained in Count Two;

E.      For an award of statutory non-economic damages of $5,000.00 against Defendant Wyler for the allegations contained in Count Three;

F.      For an award of treble damages against Defendant Wyler for the allegations contained in Count Three;

G.      For an award of Monteiro's reasonable costs of litigation and attorney's fees pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) against each Defendant as applicable for each violation of the FCRA contained in Count One and/or alternatively against

Defendant Wyler for the allegations contained in Count Three; and

    H.    For all other relief this Court may deem just and proper.

            Respectfully submitted,

            /s/Brian D. Flick, Esq.
            Marc E. Dann (0039425)
            Brian D. Flick (0081605)
            DannLaw
            P.O. Box 6031040
            Cleveland, OH 44103
            Phone: (216)373-0539
            Facsimile: (216)373-0536
            notices@dannlaw.com
            *Counsel for Plaintiff Jose Monteiro*

**JURY DEMAND**

Plaintiff Jose Monteiro hereby respectfully demands a trial by jury on all such claims that may be so tried.

            /s/Brian D. Flick, Esq..
            Marc E. Dann (0039425)
            Brian D. Flick (0081605)
            DannLaw
            *Counsel for Plaintiff Jose Monteiro*